**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT SMALL, | : |
| | : Civil Action No. 12-7733 (PGS) |
| Plaintiff, | : |
| | : |
| v. | : **OPINION** |
| | : |
| CHARLES WARREN, et al., | : |
| | : |
| Defendants. | : |

**APPEARANCES:**

    ROBERT SMALL, Plaintiff pro se
    #526636B/599249
    New Jersey State Prison, 2C Wing #4
    P.O. Box 861
    Trenton, New Jersey 08625

**SHERIDAN**, District Judge

Plaintiff, Robert Small, is a state inmate confined at the New Jersey State Prison in Trenton, New Jersey, at the time he filed this Complaint. He paid the requisite filing fee. At this time, the Court must review the Complaint, pursuant to 28 U.S.C. § 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set

forth below, the Court concludes that the Complaint should be dismissed for failure to state a claim.

I. BACKGROUND

Plaintiff, Robert Small ("Plaintiff"), brings this civil action, pursuant to 42 U.S.C. § 1983, against the following defendants: Charles Warren, Administrator at the New Jersey State Prison ("NJSP"); Susan Lawrence, Assistant Superintendent at NJSP; Sgt. Salmon at NJSP; State Correctional Officer ("SCO") J. Gunter; and Ronald Cattell, Supervisor of the NJSP Commissary/Canteen. (Complaint, Caption, ¶¶ 4b, 4c, and ¶¶ 1-5 at 5A, 5B.) The following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only. The Court has made no findings as to the veracity of Plaintiff's allegations.

Plaintiff alleges that, in December 2011, he was in a fight at NJSP, which resulted in his placement in a segregated, non-contact unit for a 15-day detention sanction. After completing his detention on January 3, 2012, Plaintiff was placed in administrative segregation. On January 3, 2012, Plaintiff received all of his legal material, his word processor, radio, and fan, but was informed that the remainder of his property, including his television, would have to be sent home, destroyed or donated. Plaintiff refused to sign any paperwork at that

2

time regarding his decision about the disposition of his personal property that could not be returned to him in administrative segregation. (Compl., at 6A, ¶6.)

On March 14, 2012, SCO C. Messick informed Plaintiff that he would have to decide what to do with the remainder of his property. On March 21, 2012, Plaintiff signed a "CO-30" form and a "CO-30a" form, authorizing the property room to send his remaining personal property home. On March 30, 2012, Plaintiff was taken off administrative segregation status and was returned to the general population. (*Id.*, ¶ 8.)

Plaintiff alleges that it cost him $60.00 to send his personal property home, and he was led to believe that all of his property was sent to his home address. Accordingly, Plaintiff decided to purchase a new television. (*Id.*, ¶ 8.) Because prisoners are permitted to purchase televisions only on the 15th day of every month, he placed an order for a 15-inch flat screen television on April 15, 2012. (*Id.*, ¶¶ 10, 11.)

On April 26, 2012, Plaintiff was on his way to the property room to send out his word processor for repairs. Plaintiff encountered Defendant Cattell at that time and asked if his new television had arrived. Cattell informed Plaintiff that he had just delivered the television to the property room. At the property room, after filling out forms to send out his word

3

processor, Plaintiff asked about his new television. Defendant Gunter asked Plaintiff what Plaintiff intended to do with his old 13-inch RCA television, which Plaintiff had believed was sent home. Plaintiff requested that his old RCA television be returned to him and that the new television be sent back since he did not now need it. Plaintiff then argued with Defendant Salmon, who insisted that one of the televisions be sent to Plaintiff's home address. (*Id.*, ¶¶ 12-14.)

Plaintiff alleges that, on that same day, April 26, 2012, Defendant Gunter told him that because the new television had not yet been engraved,[1] it could be returned and Plaintiff's prison account would be reimbursed. However, at 1:15 p.m. on April 26, 2012, C/O Throne informed Plaintiff that the property room had just engraved the new flat screen television, and therefore, Plaintiff would have to send one of the televisions home. Plaintiff insisted, however, that he did not want the new television and demanded that it be returned and the money he spent be reimbursed to his prison account. (*Id.*, ¶ 15.)

On June 13, 2012, Plaintiff received his "Inmate Monthly Statement, which reflected all financial transactions for the prior month. (*Id.*, ¶ 16.) The account statement did not show that Plaintiff had been reimbursed for the new television that

---

[1] Televisions are engraved with the inmate's name and number.

4

he had refused. Accordingly, Plaintiff filed an inmate remedy form on June 13, 2012. On June 14, 2012, an unknown female corrections officer visited Plaintiff regarding the new flat screen T.V., and told Plaintiff that he would have to send it home. Plaintiff submitted five inmate remedy forms regarding this issue, and received an unfavorable response to only one of them. Plaintiff appealed that decision and received an unfavorable final decision to his appeal. (*Id.*) He thereafter filed this § 1983 action, asserting violations of his Fifth and Fourteenth Amendment rights. Namely, Plaintiff alleges that Defendants breached a duty of care in refusing to return the new flat screen T.V. and reimburse Plaintiff's inmate account. (*Id.*, ¶¶ 17-26.) Plaintiff seeks compensatory, punitive and exemplary damages in the amount of $5,000.00. (*Id.* at 7A.)

## II. STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding *in forma pauperis* or seeks redress against a governmental employee or entity. Specifically, the PLRA directs the district court to screen the complaint for cognizable claims and to *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon

5

which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. § 1915A.

The Supreme Court refined the standard for summary dismissal of a complaint that fails to state a claim in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure, which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Citing its opinion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555), the Supreme Court held that, to prevent a summary dismissal, a civil complaint must now allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)(citing *Iqbal*, 556 U.S. at 676). *See also Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) ("The touchstone of the pleading standard is plausibility. ... "[A]llegations that are no more than conclusions are not entitled to the assumption of truth; ... [a court should] "look

for well-pled factual allegations, assume their veracity, and then 'determine whether they plausibly give rise to an entitlement to relief.'") (citations omitted). In short, "[a] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler*, 578 F.3d at 211 (citing *Iqbal*, 556 U.S. at 678-79). Thus, while *pro se* pleadings are liberally construed, *Higgs v. Atty. Gen.*, 655 F.3d 333, 339 (3d Cir. 20011), "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted). Nonetheless, courts must be cognizant that the *Iqbal* standard "is not akin to a probability requirement." *Covington v. International Association of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 679).

### III. SECTION 1983 ACTIONS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

IV. <u>DISCUSSION</u>

Plaintiff essentially complains that the money he spent on a television that he did not need and had asked to be returned was not reimbursed to his prison account. Plaintiff appears to allege that Defendants misled him, did not send home his old television as directed, did not return the old television to Plaintiff when he was released from administrative segregation, and engraved the new television despite Plaintiff's demand that it be returned and his money be reimbursed. The Court construes these allegations as an attempt to assert a claim for deprivation of property without due process in violation of the Fifth and Fourteenth Amendments.[2]

The Fourteenth Amendment provides, in pertinent part here, that the State may not "deprive any person of life, liberty, or

---

[2] The Fifth Amendment's due process clause asserted by Plaintiff is made applicable to the States by the Fourteenth Amendment. As Plaintiff is a state inmate, the Fourteenth Amendment is the appropriate standard for reviewing Plaintiff's deprivation of property claim.

property, without due process of law[.]" The "due process of law" essentially requires that the government provide a person notice and opportunity to be heard in connection with the deprivation of life, liberty or property. *Zappan v. Pennsylvania Board of Probation and Parole*, 152 F. App'x 211, 220 (3d Cir.2005) ("The essential requirements of any procedural due process claim are notice and the opportunity to be heard."). *See also Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979) (The Due Process Clause prohibits a state or local government from depriving a person of property without providing due process of law.).

To analyze a due process claim, a court conducts a two-part inquiry: a court determines whether the plaintiff "was deprived of a protected interest, and, if so, what process was his due." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982); *see also Holman v. Hilton*, 712 F.2d 854, 858 (3d Cir. 1983). Although Plaintiff may have a property interest in the money he expended for a television that he did not need by virtue of being misinformed that his old television had been sent home, *cf. Dockery v. Beard*, 509 F. App'x 107, 114 (3d Cir. 2013) ("'Inmates have a property interest in funds held in prison accounts' ... and so they are 'entitled to due process with respect to any deprivation of this money'" (quoting *Reynolds v.*

9

*Wagner*, 128 F.3d 166, 179 (3d Cir. 1997)), his due process property claim nevertheless fails as a matter of law because the New Jersey Tort Claims Act ("NJTCA"), N.J. Stat. Ann. § 59:1-1 et seq., and the prison's grievance procedure, *see* N.J. Admin. Code § 10A:1-4.1(a)(1), provide all the process that is due. *See Holman*, 712 F.2d at 857; *Asquith v. Volunteers of America*, 1 F.Supp.2d 405, 419 (D.N.J. 1998), *aff'd* 186 F.3d 407 (3d Cir. 1999). Because the NJTCA and inmate remedy procedures were available post-deprivation remedies providing all the process which is due, Plaintiff's due process deprivation of property claim fails and this Court will dismiss it for failure to state a claim upon which relief may be granted. *See Dockery*, 509 F. App'x at 113-14 (dismissing deprivation of property claim regarding inmate property not returned to him through grievance process because inmate had an adequate post-deprivation remedy); *Pettaway v. SCI Albion*, 2012 WL 1850919 (3d Cir. May 22, 2012) (dismissing as frivolous inmate's appeal challenging order dismissing his deprivation of property claim); *Crosby v. Piazza*, 465 F. App'x 168, 172 (3d Cir. 2012) (affirming dismissal of inmate deprivation of property claim on ground that administrative grievance procedure provided adequate post-deprivation remedy); *Tillman v. Lebanon County Correc. Fac.*, 221 F.3d 410, 422 (3d Cir. 2000) (prison's grievance program

provided adequate post-deprivation remedy for inmate's deprivation of property claim).

V. CONCLUSION

For the reasons set forth above, the Complaint alleging a claim for deprivation of property without due process will be dismissed with prejudice, in its entirety, as against all named Defendants, for failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(1). Plaintiff's motions for default judgment (Docket Nos. 3, 4) are denied as moot. An appropriate order follows.

_____
PETER G. SHERIDAN
United States District Judge

Dated: 8/14/13